Thank you. Please. Mike Worry. I'm here on behalf of their service. There's four points that I think we'd like to make a little argument. The first yesterday we talked about three, didn't we? Three and a half. We're going to see if we can do we can do see if we do four and ten as opposed to three. And the first the first issue I think has to do with the tax court really use the wrong hands of statutory construction in construing this statute. This is clearly Indian legislation, the Indian employment credit. And it should have been considered as the Federal Circuit had has suggested in the Doyon case. Tax statutes tended to promote Indian policy should be construed as other Indian legislation with liberal construction in favor of providing a benefit to Indians. What's really important is the tax the tax court. Well, that was extensively briefed below the tax court simply did not apply that standard. And it's very straightforward. Pointed out in the excerpt 20. Secondly, the tax court was very confused by and throughout the issue, the whole issue of the Veneti decision and how it relates to the statute has confused the issue greatly. Of course, that decision held that there is no Indian country that ASEC Corporation land is not Indian country. Therefore, it would not be a reservation. That's entirely irrelevant to this case. And but it continually pops up and was even discussed by the tax court. The general because it's irrelevant because the tax, this statute in question here clearly makes a sub lands reservations for these tax purposes. And how does it say it? How does that act? Well, just list the answer. And I wish I wish the tax code was so straightforward. No, it makes you have to go through three reiterations of statute because of the cross references. But it basically says that reservation land that you have to be within the reservation statute. Right. And then you go back to the definition within the tax code of what a reservation is. And it says, well, look at the definitions in the Indian Welfare Act and the Indian Financing Act. And by the time you get to that point, Indian Financing Act is clearly contains the definition of AIMSA lands as Indian reservations. And as we point out, AIMSA lands, while the general principle that AIMSA lands are not reservations is the general rule. Congress has since the Claims Act passed several pieces of legislation that do exactly this, that treat them as reservations for specific purposes. And this is one of them. I guess then the question is how much. Can you imagine a reservation that looks like a donut? Or would it look more like a circle instead? Well, that's the fourth issue, actually. And I might as well jump to that. And the simple fact is, is that this is a statute that has general application throughout the country. And as this court in, and I apologize if I've got this name wrong, Buggatick, basically points out, as this court, it's very common for reservations to have inholders of fee interest. No question about that. Yeah. And everybody agrees on that. And lots of times the donut, the Flathead Reservation, of course, has a huge donut in the middle of it, the Flathead Lake. And it's not uncommon to have fee interest lands inside a reservation. It's different. What I was kind of asking is whether you can have a reservation that has non-reservation land in it. Not just free land. In other words, the reservations are described in down where they have reservations. That is by meets and nods. I say, you know, and anything presumably that's inside that is within the reservation. But but whether when we're imagining a reservation up here, do we imagine the meets and bounds make the reservation look like a donut or does it look more like a plate? Circular. Well, that's our point, is that the term is not on reservation. It is within our reservation, within the you know, and I assume that within it connotates some notion of boundaries. And of course, within my definition means you have to have boundaries. And if you're within those boundaries, you're within those boundaries. You're the problem. You're completely encircled. Is that right? Yes, it is 100 percent encircled. And inside the donut, inside the donut is a checkerboard system of all kinds of lands, including village corporation lands, regional corporation lands, native allotments, which are, of course, under the Veneti decision are in fact technically Indian country and federal restricted town site lots, which are, of course, Indian country under Carlo versus Gustafson and the footnote in Veneti. So it's it's not a donut. You know, I mean, this would be a pretty ugly donut if you went to a donut shop, because it would have all kinds of specks inside of maybe like a sprinkled donut inside. But it's really not a real donut. It's really a checkerboard system of land. It's very common in the lower 48 throughout Indian country, throughout reservations. I guess my final point in an effort to reserve some time is the notion that the court really the court. And it gets back to the first point in terms of interpretation is the court somehow comes up with the idea. And the logic is, I mean, this is the court's logic, is that the term within is ambiguous. But that it clearly does not mean within that it means off reservation. And I can see saying that within is ambiguous to some degree. And we have to come up with some kind of rule as to what within means. Is it a donut or is it not a donut? Well, I guess it'd be hard if the hole in the donut is a hundred miles across. It is very difficult. But that just doesn't happen. Not even on the Navajo reservation or the top of the or the top. Now you look at some of the Western reservations and you know, they're not donuts. They look more like checkerboards in many ways. Right. And that's that's what you have here is this huge checkerboards. You have this checkerboard system. But if we take your theory that. Within doesn't mean on because it doesn't say that. And there's some ambiguity in the legislation. And you recognize what they were trying to do, and they used the word on pretty clearly. And that would be in favor of the natives or the Indians. Would you end up back at the same place that within means on basically? Well, not really, because it assumes a different purpose. Because the purpose here is not to give a tax benefit to somebody who holds a particular tax or a particular status of land. The purpose of the statute is to employ Indians within the reservation. And if you're employing Indians within the reservation, I assume boundaries, of course, that's what we argue. Then whether or not they're working on fee simple land here and whether or not they're working on reservation land here should make no difference. Except that. Let me just ask you this. Wouldn't the whole state of Alaska in some respects be within a reservation? No, because because first, there's a couple of reasons. First of all, what it does mean is that, well, first, it's kind of unusual to have an entire community totally surrounded through selection by aims to land. A lot of times, most of the lands are like, for example, in the Yukon Flats, you have checkerboard selections under a maximization agreement, this kind of thing. And so you don't have this wholly encompassing block of land. No, but you take the whole state of Alaska, make the boundaries the state of Alaska. I mean, it just seems to be it. But under your rule, we'd have to kind of figure out under every land configuration what the answer was. No, because, for example, the whole state of Alaska is not encompassed within aims to lands. The whole state of Alaska actually encompasses those aims to lands. It's quite the opposite. And so while it does suggest that in a majority of rural communities, which, of course, are economically deprived, those communities are going to receive this economic development benefit. But like, for example, here in Anchorage, probably very unlikely because you don't have, for example, the village of Eklutna, which is the village over here, totally encompassing Anchorage, nor any other village doing that or any other major non-native community in Alaska. That's just not simply the way the land status works. Where it does work in this particular way is in these small rural villages where you have lands that are blocked in and totally encompass the community. And that's not the case in every community. So if I can reserve my 40 seconds, I'll do that. Well, a couple of things. What makes you think the the reservation on the. Yeah. What's the name of the big lake? You named it. Oh, my. Right. So by that lake. Yeah. Is is is a donut. Subsurface claims of the state of Montana. I'm not mistaken. I could be wrong. I did an opinion many years ago and which, in effect, gave the southern half of Flathead Lake back to the tribe. Right. You got the same situation in Coeur d'Alene. Yeah. Yeah. But anyway, the other thing is, is to have a slogan in the donut shop in Los Angeles that read as you travel on through life, brother, whatever be your goal, keep your eye upon the donut and not upon the hole. And I think that should be the rule of this case. Thank you. This case involves the interplay of on the eye, the Indian Employment Credit enacted in 1993 and the Alaska Native Claims Settlement Act enacted in 1971. I would submit that we have a very different situation here from the situation we would have if the same case arose in the contiguous 48 states. And the answer would be different because the way the statutes were. And I'm glad to hear you say that, but it's not the way your brief is written. The brief seems to argue that to be within a reservation anywhere in the 50 states, you have to be on Indian land, not the land. I don't disavow anything I said in the brief. I just I just have a different perspective on it. Now, I understand the question you just raised, which is a crucial one. And that is, does that any does that transfer very well to Alaska? No, because the way the definitions work, the definition refers, the definition of Indian reservation in the statute refers to the Indian Finance Act and the Indian Child Welfare Act. The definition of the Indian Child Welfare Act in turn refers to the definition of Indian country defined in 18 U.S.C. Section 1151. Well, if you refer to the definition of Indian country, Indian country is specifically defined to include rights of way. In other words, it's also defined to include free land within a reservation. Well, yes, it includes any patent. It includes Indian allotments. Includes Anglo purchased land and it includes rights of way, which I assume this airport property is. So assuming that an airport property is the right of way, the answer to the question would be different in the contiguous 48 states. You would look at it and say Indian country specifically includes rights of way. If this is a right of way, therefore, the person who employed Indian on a right of way would get the credit in the contiguous 48 states. The ANCSA was specifically adopted to abolish the reservation system in Alaska. The whole Indian system in Alaska is very different from the Indian system and contiguous 48 states. They don't have the entire, the whole, the whole bad history that was true in the 48 states. The purpose of ANCSA was to abolish the reservation system to make the Indians self-governing. So land was parceled out to these village corporations and the statute 43 U.S.C. section 1613 specifically provides the title to land on which an airport is located is required to be conveyed to the federal or state government or appropriate municipal corporation. So here you have under ANCSA, you know, it's very different from the definition of Indian country. Indian country right of ways are specifically included. And the Supreme Court has held in the Alaska versus native village of Benatee tribal government under 522 U.S. 520 that a village corporation isn't included within the definition of Indian country. So then you look to, so you have a very different situation. You have airport land specifically excluded in the Alaskan system, whereas I believe it would be part of, you know, a right of way and would be included in the contiguous 48. So I think we have a uniquely Alaskan situation here. So then you have to, since it's not within Indian, it's not, it's not reservation property. You have to look at the phrase, what is within an Indian reservation mean? Well, we submit that the tax court correctly concluded that it means on a reservation because you have to look, look to the legislative history and you look to the rest of the statute. For this, would this taxpayer qualify if his land was located on village selected land? Well, you mean if it's private property? Let's say the village says we'd like to come in and build a gas station on, we'll lease you some land on our, the lands we selected on your ANCSA, and we want you to come in and build a gas station here. Would he, if he employed some local natives that lived there, would he get the tax credit? I believe he would, because under the Indian, the Indian Finance Act defines a reservation to include the, you know, the incorporated native groups, regional corporations, and it says land held. Now, I don't know what held means, that's another subject for litigation, whether it means owned or, you know, does held mean owned? You know, land held by incorporated native groups and village corporations under the provision of the Alaska Native Claims Settlement Act, that is specifically defined, specifically covered. Okay. So, the problem in this case is it's not held, you know, whatever held means, it's not land that's held by these village corporations. I was just trying to, I'm trying to see how much different you believe Alaska is from the lower 48. Well, it's different because of the way, of the different definitions. For example, the ANCSA, lands held by ANCSA is specifically included in the definition of reservation under 25 U.S.C. 1452d, and taxpayer concedes that this property is not reservation property. I presume, though I can't speak for him, that he would not make that concession if it was in the contiguous 48 states because the definition of Indian country, which is included in the definition of reservation within the Indian Child Welfare Act, that would be included. So, taxpayer concedes that this property does not fall, is not Indian reservation property, so then the question comes to what does the word within mean? So, it's our position that the court below correctly held that within means on. Specifically, you have to look at section, the remaining part of the statute supports that interpretation. When you look to 41C1C, one of the qualifications for this, for this credit is that the principal place of a vote of such employee while performing such services is on or near the reservation in which the services are performed. So, the statute makes it quite clear that the services are performed on the reservation when it says reservation in which the services are performed. So, when you read that subsection, on or near the reservation in which the services are performed. So, it basically says reservation in which the services are performed. In other words, the services have to be performed on the reservation, but the Indian doesn't have to live on the reservation. He only has to live on or near the reservation. See, I guess what threw me off a little bit is that your brief at page 11 says Congress knows the difference between, on the one hand, land within an Indian reservation and, on the other hand, land with a reservation property or not situated within the exterior boundaries of an Indian reservation. Land that's situated within the exterior boundaries of an Indian reservation is reservation land by definition. Well, I don't understand how you can differentiate between land within an Indian reservation and land within the exterior boundaries of an Indian reservation. Well, the statute, the Congress has used different language for different statutes and the courts have construed the language differently. For example, this court, I believe it was in the case of Louie, construed language within an Indian reservation to exclude the land. Louie was the case cited in my brief that was in the early part of the 20th century. The Eighth Circuit disagreed with that, so this court has disagreed with the Eighth Circuit on the interpretation of that phrase. What year was it? 1921? It was maybe before 1920. It was 1921, actually. Louie v. United States, this court said the fact that the land was situated within the limits or boundaries of an Indian reservation is immaterial. So it specifically held that fee land was not the phrase within an Indian reservation. It did not include fee land, and then the Eighth Circuit came to the opposite conclusion. Actually, I think so did the Supreme Court and a lot of other people. In other words, the question in Louie was, when an Indian commits a major crime on fee land within a reservation, is it subject to the Major Crimes Act? The answer to that is clearly yes. I can write an awful long letter saying that it is. The fact that it's fee land, the Supreme Court has said that there are limits to the power of tribal courts over non-Indians who are on fee land. They have never said that fee land within a reservation is not reservation land. Well, the statute was amended because of these decisions, including the decision of this court. So the point is that all these statutes have different histories and they have to be interpreted in light of history. I mean, does anybody take a brief like this and put it in front of the Department of Interior and ask them what they think of it? We did ask. This brief was sent to the Bureau of Indian Affairs. They did have input into this, into our position. I mean, I understand what comes through in the brief. There's a lot of talk about reservation land as if reservation land has to be trust land. It doesn't in the War of 48. Now, it may be when you move to Alaska, you've got a really different situation. Well, I think there is a different situation because Congress in 1971 abolished the whole reservation situation in Alaska. It didn't do so in the contiguous 48. It wanted to make the Alaskans self-governing. So you have a whole different situation in Alaska. And the statutes were amended to reflect that difference. So you have the Indian and you have the Supreme Court specifically saying, specifically holding, in this sanity case that the definition of Indian country doesn't apply to, you know, ANCA land. Whereas here you're telling me under the definition of Indian country, sea land is within the definition of Indian country. Well, the situation is very different in Alaska. So we have a different situation in Alaska. And we're not even dealing with sea land here. We're dealing with airport property, air reservation property, 43 U.S.C. Section 1613, Title to Land on Airport, which an airport is located is required to be conveyed to federal or state governments or airport municipal corporations. So, frankly, to talk about sea land is sort of a red herring in this case. This doesn't involve sea land. It involves, basically, airport property. And property, which is... Who owns it? Pardon? Who owns it? I believe the United States government and I believe the state of Alaska also. The state of Alaska owns the property on which the Air Charter Service is situated. And the taxpayer leases this property from the state of Alaska. I believe that another part of the air navigation strip is also owned by the federal government. So we're not dealing with this whole history of, you know, the General Allotment Act and property that, you know, was allotted to the Indians and then sold out. It simply has no application here. And it sort of confuses the issue to talk about it. All we're dealing with is, you know, airport and air strip, really. I think the difficulty in your brief is that there's lots of broad statements about Indian law that don't really focus on Alaska. So I guess what I'm confused about is, do you think that because it relates solely to Alaska that the IFA definition is the definition we should be using? Or do you think that the Indian country definition, which is more consistent with the general Indian law under the Indian Child Welfare Act, should be included also because it is referenced in the tax legislation? The Indian country definition has absolutely no application here. The Supreme Court has said so. In Alaska versus native village identity tribal government, the definition that's relevant is in the Indian Finance Act, which is 25 U.S.C. 1452. And it is conceded in this case that the property involved here does not fall within that definition. Taxpayer has conceded that. So it's our position that in light of that concession, we have to look at the legislative history that basically says, it repeatedly talks about attempting to help, you know, businesses on a reservation. And it's conceded that the property here is not on a reservation. So it's our position that we have a situation that is a peculiarly Alaskan situation and that the decision of the court below is correct for the reasons stated by the tax court. Okay, I hope that if we accept your view, it won't lead the department to believe that a tax exemption should be denied to businesses on fee land, not Indian-owned fee land within the exterior boundaries of Indian reservations in the lower 48. Well, I'm not aware of any such case, but I know. No, I'm sure it could be. All right. Any rebuttal? Yes. The first point is, that's not what the tax court held. What the tax court held is quite contrary to, as comments from the court have noted, a concept which would apply in the lower 48, that on reservation basically means Indian land within the reservation, and that fee land is excluded from that benefit of the Indian employment credit. Secondly, I'm not, I think... Let me just say, I'm not sure that you have to go that far, because you have kind of these conflicting odds, what does odd mean, because it's within, and then if you go to Indian country,  Right. So, I'm not sure that the tax court's analysis somehow excludes fee land that actually falls within the exterior boundaries. If you had such a situation. I think it does, actually. I think that it's pretty clear that they are excluding all fee land within the exterior boundaries of an Indian reservation, even within the lower 48. The logic of the decision makes no peculiar distinction between Alaska and the lower 48 at anywhere in the decision. Of course, we don't need to accept their rationale. If we were to uphold them, we don't have to adopt their legal rationale for it. Well, I'm not so sure that's the case, because what it would suggest is that the court, this court would basically reconsider the whole matter de novo, and would not allow the tax court an opportunity of its instructions on remand. We do, it's a statutory interpretation. Right. We do look at de novo all the time. We don't send things back to the district court and the tax court to say, you know, take another stab at interpreting the statute. It doesn't work that way. But the court has raised a very, the second point is the court has raised a very interesting point. And that is, if, in terms of a concession, the notion that the taxpayer has conceded that this is not reservation land, no, it is stipulated, the stipulated facts speak for themselves. What the taxpayer is stipulated to is that the land is owned by the United States government and the state of Alaska. And it's a very complex land tenure system that we don't go into in great detail, but essentially it's a former defense site that's been reduced under the Alaska Native Land Claims Settlement Act and then deeded over to the state of Alaska with substantial reversionary clauses because it's a military base and an aviation site. But aside from all of that, the point here is this idea about right-of-ways, which is kind of an interesting thing that's been raised on an oral argument I think for the first time, and that is that should you just take a look at the Indian Financing Act alone and you say, okay, the Indian Financing Act, do you also say, do you also allow consideration of the general definition that talks about, of Indian country, that talks about the inclusion of all fee land within, and it's been interpreted that way, to include all fee land within the exterior boundaries of the reservation. And that's the concept fundamentally that is at litigation. The fundamental concept is that anywhere in the country, unless you have a disestablished reservation, anywhere in the country, the reservation boundaries define what a reservation, the exterior boundaries of that reservation define what that reservation is. And the land, I would suggest that Judge Campion is correct, that the land within that exterior boundary. Yeah, but that's usually as defined by Indian country. And here, we don't really have a reservation. Instead, we have a word called reservation that is applied in Alaska to certain discrete corporate holdings, if you will, based on the outflow after ANCSA. So it seems to me a little bit different situation here because you do have the Congress looking specifically at Alaska under the IFA. And that raises a question as to whether with that specific reference, you would even go to the general reference that you're talking about. Why would you go there? The problem with that interpretation is it totally rewrites the statute to suggest that only ANCSA corporations can avail themselves of this tax statute. And if that's what Congress meant, Congress would have said only ANCSA corporations could avail themselves of this tax credit. That's not what they said. They used a geographical designation within reservations and left it, unfortunately, up to you to figure out exactly where, you know, are we talking about the donut or the hole? And the logic here is that this is a geographical designation designed, and I think we have to take into account the whole purpose of the statute, which is to promote employment of Indians within reservations. If you're promoting employment of Indians within a reservation, the relative status of the land within the reservation is irrelevant to that goal of providing employment within the reservation for Indian people. And that is the crux of this decision. Because not only does it say that that purpose, that that congressional purpose of promoting employment within the reservation for Indian people is only restricted to certain parts of the area that are owned, in fact, by the native corporation, but it also takes that same logic and extends it to the lower 48 and not restrict it to Alaska. So we would suggest that the whole matter should be reversed and remanded and that the court should keep in mind the fundamental purpose of this act, which is to promote employment of Indian people within the reservation. And that would include fee-simple lands within the exterior boundaries of the reservation or, in this particular case, the ANCSA corporation. All right, thank you. Thank you. All right. The matter is then submitted.
judges: Pregerson, Canby, McKeown